MARTINEZ v. CATHEY et al. (No. 8159.)

(Court of Civil Appeals of Texas. Dallas.
June 7, 1919. Rehearing Denied
Oct. 25, 1919.)

1. PRINCIPAL AND SURETY ⬤⟿28—NOTICE OF
ACCEPTANCE OF BOND NOT NECESSARY TO
CHARGE SURETIES.

Notice of acceptance of bond, it being one
of security, and not of guaranty, securing per-
formance of their contract by cigar salesmen,
*held* not necessary to charge the sureties.

2. PRINCIPAL AND SURETY ⬤⟿99—RELEASE
BY MODIFICATION OF CONTRACT OF SURETIES
OF SALESMEN.

Where cigar salesmen contracted with their
employer they should sell a certain brand in
territory, including Kansas City, but there was
a tacit exclusion of Kansas City from the terri-
tory, and also their employer delayed in fur-
nishing cigars necessary to fill orders, thus
causing loss of commissions, the modifications
of the contract discharged the sureties on the
bond of the salesmen, responsible for their
own default.

3. MASTER AND SERVANT ⬤⟿70(2)—ADVANC-
ES TO SALESMEN AGAINST COMMISSIONS A
LOAN.

Amount of $425 a month advanced by their
employer to cigar salesmen operating inde-
pendently under contract, the sum to be de-
ducted from their commissions, *held* a loan
to the salesmen to enable them to advance
their own trade, and not a gift by their em-
ployer.

4. EVIDENCE ⬤⟿442(4)—PAROL EVIDENCE NOT
CONTRADICTING WRITTEN CONTRACT.

Where a contract between their employer
and cigar salesmen was silent concerning the
employer's duty as to filling orders solicited
by the salesmen, whether promptly or other-
wise, proof on the point was admissible.

Appeal from District Court, Dallas Coun-
ty; Kenneth Foree, Judge.

Suit by P. P. Martinez against F. W. Ca-
they and others. From a judgment for plain-
tiff against certain defendants, and for other
defendants against him, he appeals. Af-
firmed.

Spence & Haven, of Dallas, for appellant.
Carden, Starling, Carden, Hemphill & Wal-
lace, of Dallas, for appellees.

RAINEY, C. J. Appellant sued appellees
Cathey and Champion and their sureties to
recover $4,015.07, moneys advanced to them
in attempting to comply with a contract en-
tered into by appellant, called party of the
first part, and Cathey and Champion, named
parties of the second part, wherein the par-
ties of the second part agreed to give their
entire time and to devote their best energies
to the selling and pushing of the goods
handled by the party of the first part in said
territory therein named, and to sell said
goods only at prices fixed by the party of the
first part, in the state of Kansas, including
Kansas City, Mo., except the towns of Coffey-
ville, Parsons, and Pittsburg, for a period of
not less than one year, but the contract to
run six years, with the right of either party
to terminate it upon certain conditions.

"Plaintiff further alleged that, in connection
with said contract and as a part thereof, and
before its delivery to and acceptance by the
plaintiff, the said F. W. Cathey and W. F.
Champion, as principals, and H. F. Mercer, J.
J. Pitchford, Toney Dorsa, V. B. Littlejohn, J.
M. Broadhurst, and W. A. Cathey, as sureties,
executed their bond to plaintiff, pursuant to
the twentieth paragraph of said contract above
set out; said bond being in words and figures
as follows:

"'State of Texas, County of Dallas:

"'Know all men by these presents: That we,
F. W. Cathey and W. F. Champion, as princi-
pals, and ...... and ......, as sureties, ac-
knowledge ourselves obligated unto and firmly
bound to pay to P. P. Martinez, at Dallas, in
Dallas county, Texas, the sum of four thou-
sand ($4,000.00) dollars, conditioned, however,
that if F. W. Cathey and W. F. Champion
shall well and truly perform all obligations en-
cumbered upon them under that certain con-
tract dated the 6th day of February, 1915, by
and between P. P. Martinez, as party of the
first part, and F. W. Cathey and W. F. Cham-
pion, as parties of the second part, and shall
well and truly pay to the said P. P. Martinez
any and all moneys which shall become owing
to said P. P. Martinez by F. W. Cathey and
W. F. Champion, under the terms of said con-
tract, which is here referred to and made a
part hereof, this obligation shall be null and
void; otherwise, to remain in full force and
effect.'"

It was further alleged that Cathey and
Champion had abandoned their contract and
were owing Martinez $4,015.07, for which
judgment was prayed against all defend-
ants.

Defendants filed a joint answer, consisting
of a general demurrer and a general denial,
admitting the execution of said contract and
bond; that there was no consideration for
the execution of said contract and bond; that
if the commission earned upon sales by two
defendants were not sufficient to pay plaintiff
same was not to be repaid by them; that
Martinez refused and failed to furnish suf-
ficient cigars to them with which to fill the
orders received, and which orders were not
filled, causing the two principal defendants
to lose money and render the business un-
profitable, and further that Martinez refused
to allow them to sell the Don Juarez cigars
in Kansas City, which caused them great loss

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in commissions and took for a time said cigars off the market; that Martinez and the two principals changed and modified the contract, making it impossible for the principals to make a profit, by which he could be repaid, and thereby released the sureties from the bond, and they thereby became released; that Martinez never notified them of his acceptance of them as bondsmen, or notified them of the default of the principals, etc., or gave them notice of the advances made to them.

Appellant replied to said answer by general and special demurrers and denial, and pleaded an estoppel. Defendants filed a trial amendment, and charged Martinez with terminating the contract and pleaded in cross-action for $3,000.

The case was submitted to a jury on special issues, and on the return of answers to the same a judgment was rendered against the principals for $3,458.15, and against appellant for the sureties from which appellant appeals.

### Conclusions of Fact.

On February 6, 1915, when the contract between appellant and appellees was entered into, Martinez was conducting a wholesale and retail cigar business in Texas, Oklahoma, and Arkansas. He engaged Cathey and Champion to sell cigars in the state of Kansas, except certain towns, viz. Coffeyville, Parsons, and Pittsburg, but including Kansas City, Mo. They were to sell cigars in all places in ·said territory and pay their own expenses. They were to be remunerated by commissions to be paid by Martinez on cigars sold, Martinez to advance them $425 per month. Said amount was used by said appellees for their own use, and no account made by them of how it was used to Martinez. The contract specifies that Martinez agrees to advance to Cathey and Champion "$425 per month, which sum will be deducted from their commissions." The contract implies that, if the commissions are not sufficient, Cathey and Champion will be indebted to Martinez for any deficit of the advance made not covered by the commissions. There was a deficit in commissions to pay the advance made of $3,458.15. Part of the time Martinez could not furnish all the cigars necessary for supplying the trade, which caused a loss of commissions to Cathey and Champion, which would· have enabled them to pay back the advances they had received. Martinez advised against the working of Kansas City and the introducing of the Don Juarez cigars, and withdrew them from that territory, which was acquiesced in by Cathey and Champion and which territory was not worked. This was naturally a material change in the contract, and worked a release of the sureties; they not having consented to

it. Martinez did not arbitrarily and without cause fail and refuse to furnish cigars or to fill orders for Cathey and Champion, but by reason of the conditions of the trade he could not have the cigars manufactured fast enough; but he divided such as he got equally with the different sections. He promised to fill all orders promptly for Cathey and Champion, which he did not do, but was unreasonably delayed in filling orders as far as the demands of the trade required.

### Opinion.

[1, 2] The bond, which was the basis of this suit, was a contract of security, and not of guaranty, and notice of acceptance of the bond by Martinez was not necessary in order to charge the sureties, nor were the sureties entitled to notice of default on the part of the principals, if they were otherwise exonerated from liability, which we think was the case, as shown by the evidence. The evidence shows that Cathey and Champion contracted with Martinez that they should sell the Don Juarez brand of cigars, and Kansas City was allowed as territory in which to operate; but by the acts of Martinez said brand of cigars was taken off the market for six months, and Martinez did not approve of their operating in Kansas City, and in deference to said disapproval by Martinez Cathey and Champion did not operate in said city. It also shows that at the time Martinez delayed furnishing cigars for sale necessary for the filling of the orders of Cathey and Champion, causing the loss of sales and an injury to the building up of a trade in that territory, which caused the loss of commissions. The changes and modification of the contract, as just stated, which were tacitly agreed to by the said parties, if not expressly agreed to, caused such a modification and change as worked a discharge of the sureties' liability, and no recovery was warranted against said sureties. Such acquiescence on the principals' part did not release them, but left them responsible for their default.

[3] It is contended by Cathey and Champion that under the contract they are not liable to Martinez for any money advanced beyond their commissions earned. The contract provides:

"Party of the first part agrees to advance parties of the second part the sum of $425 per month, which sum will be deducted from their commissions."

We think the use to which the $425 advanced monthly was to be put will determine the nature and character of the advance. Appellee Champion testified that—

"Mr. Martinez had nothing to do with how we divided the $425. I used my part of the

$425 as I saw fit. * * * He (Mr. Martinez) had nothing to do with the amount I drew each month, or the amount Mrs. Cathey or Mrs. Champion or Mr. Cathey drew each month. It was decided that Mr. Cathey would draw $150, and I $150, and my wife $50, and Mrs. Cathey $75. We agreed on that. * * * When we traveled up there, whatever we spent for hotel bills or railroad fare, or any other expenses of any character, whether we paid it out for medical bills, or sent some down in Texas, or anything else, Mr. Martinez was not consulted in that. We did not make him out an itemized statement of our expenses; we spent it as we saw fit. Mr. Cathey spent his part of it as he saw fit. If I spent part of it for running a house in Wichita, I said nothing to Mr. Martinez about it; he had nothing to do with it."

It was not spent for the use and benefit of Martinez in upbuilding Martinez's business, and we take it from the contract and all the evidence that the advancement was made to enable Cathey and Champion to advance their own trade, and was not intended as a gift by Martinez, but was intended as a loan of that much money. This is further shown by the fact that Martinez furnished Cathey and Champion a statement every month, showing the amount of advancements as debits, and credits for commissions earned, which was evidenced by their indorsements as "Correct." Neither ever protested that said amount was not due and owing, and we conclude that said amount of $3,458.15 was owing by Cathey and Champion and that they were liable therefor.

Appellant assigns as error the submission to the jury of special issues Nos. 18 and 19, which are as follows:

Special issue No. 18 was as follows:

"Did Mr. Martinez promise or represent to either or both Mr. Cathey and Mr. Champion, either before or at the time of the execution of the contract in evidence, in substance that he could and would cause their orders to be shipped promptly, or reasonably promptly filled and shipped?"

Special issue No. 19 was as follows:

"Did Mr. Martinez cause all the orders of Messrs. Cathey and Champion to be as promptly filled and shipped as you have found he represented to or promised them they would be so filled, in the event you have so found in answer to the aforesaid question?"

The following proposition is presented:

"Plaintiff, P. P. Martinez, declared upon a written contract, and therefore any verbal agreement had either before or at the time of the execution of the contract, would be irrelevant and immaterial, for the reason that the same would not be binding upon P. P. Martinez, because the contract could not be changed or varied by an oral agreement made prior to, or contemporaneous with, the execution of the contract."

[4] The contract was silent concerning the duty of Martinez on the point as to filling orders solicited by the salesmen, whether promptly or otherwise, and it was not error in the court to allow proof on that point. Magnolia Warehouse & Stor. Co. v. Davis-Blackwell, 108 Tex. 422, 195 S. W. 184.

In the case just above cited Mr. Jones' Commentaries on Evidence, § 434, is quoted by Mr. Justice Yantis, as follows:

"The general rule is that parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written contract. But one of the exceptions to the general rule is that, if the written instrument itself shows to be either ambiguous or incomplete, parol testimony is admissible to show what the real contract was to the extent necessary to remove the ambiguity, and to make the contract complete in its terms which show to be incomplete. The exception to the general rule is as well settled as is the rule itself."

We have considered all assignments and cross-assignments of error presented, and find none requiring a reversal of the case, and the judgment is affirmed.

Affirmed.